SCHMITZ, Special Administratrix, Appellant, vs. SCHUH, Respondent.*

*September 8—October 5, 1954.*

* Motion for rehearing denied, with $25 costs, on December 7, 1954.

For the appellant there were briefs by *Henry P. Hughes* of Oshkosh, attorney, and *Lines, Spooner & Quarles* of Milwaukee of counsel, and oral argument by *Mr. Hughes.*

For the respondent there was a brief by *Bradford & Gabert* and *William J. Schuh,* all of Appleton, and oral argument by *Alfred S. Bradford.*

GEHL, J. This ·is an appeal from an order entered on January 26, 1954, denying plaintiff's petition for revival of an action against the executrices of the estate of the defendant M. A. Schuh, and dismissing the action upon its merits.

On behalf of plaintiff and in support of her petition, there were submitted her complaint, and an affidavit alleging the death of defendant, that he had been examined adversely, that the complaint had been demurred to, that the demurrer was undetermined, and that executrices had been appointed.

The material allegations of the complaint are as follows:

"3. That Henry A. Schmitz died on March 5, 1931; that at the time of his death he was a resident of Outagamie county, state of Wisconsin; that the last will of Henry A. Schmitz was duly admitted to probate in the Outagamie county court on April 7, 1931; that the Appleton State Bank and Herman Joseph Schmitz were appointed, qualified, and served as coexecutors during the administration of said estate; that the judgment allowing the final account of the said coexecutors was dated December 31, 1935, and the coexecutors were discharged on March 17, 1936; that at all times during the administration of said estate, the defendant was a stockholder and sole managing officer of the Appleton State Bank.

"4. That prior to his death, on January 6, 1931, the deceased executed a promissory note extending time for pay-

ment to the Marshall & Ilsley Bank of Milwaukee, Wisconsin, of an indebtedness in the amount of ten thousand ($10,000) dollars, said note to mature in sixty days and to bear interest at 7% per annum; that as security for the payment of said indebtedness, the deceased had, on or about December 4, 1926, pledged 70 shares of the capital stock of the Appleton State Bank and delivered to said Marshall & Ilsley Bank certificate No. 302 representing said 70 shares together with an assignment dated December 4, 1926, naming said Marshall & Ilsley Bank as assignee; that said note was not paid by the deceased; that said Marshall & Ilsley Bank duly filed a claim against the estate; that the deceased's interest in said pledged stock was inventoried and appraised at $17,500 in the original inventory dated October 1, 1931; that a corrected inventory dated November 5, 1935, showed the estate's interest in said stock to be valued at $7,500 over and above the $10,000 due the Marshall & Ilsley Bank.

"5. That said defendant was in a position to know, and did know, the true value of said 70 shares of the capital stock of the Appleton State Bank of which defendant was manager; that the defendant misrepresented the value of the 70 shares to all of the heirs and some of the beneficiaries of Henry A. Schmitz; that he misrepresented the value of said shares to Edward J. Hopfensperger, husband of one of the heirs; that he misrepresented the value to the Marshall & Ilsley Bank, the pledgee; that such misrepresentations were fraudulently made to induce the heirs not to redeem the pledge and to induce the Marshall & Ilsley Bank to accept the defendant's offer of $8,750; that the heirs did rely on the misrepresentations and made no effort to redeem the pledge.

"6. That the defendant, while manager of the Appleton State Bank, one of the coexecutors, on or about January 18, 1936, purported to buy said 70 shares from the Marshall & Ilsley Bank for $8,750; that the conservative book value of said shares at that time was $261.43 per share; that on or about January 21, 1936, the defendant received from the Marshall & Ilsley Bank certificate No. 302 representing said 70 shares and the assignment dated December 4, 1926, signed by Henry A. Schmitz and naming the Marshall & Ilsley Bank as assignee, said assignment having the name Marshall & Ilsley Bank as assignee deleted by typewritten symbols.

and at the end of the assignment the words 'erasure guaranteed.' That upon receipt of the certificate M. A. Schuh directed one of the bank employees to insert 'M. A. Schuh' above the mutilated Marshall & Ilsley Bank name, then caused to be issued to himself a new certificate No. 563 representing said 70 shares in his own name.

"7. That prior to the purported purchase by the defendant, said defendant had been advised by Albert Krugmeier, attorney for the coexecutor, that it was improper for him, as officer of a coexecutor, to buy for his personal account assets belonging to the estate; that after the purported purchase the defendant offered to sell a one-third interest in said 70 shares to Albert Krugmeier and to B. J. Zuelke, then president of Appleton State Bank, and said offer was refused.

"8. That since the purported purchase by the defendant two stock dividends have been declared so that the original 70 shares have now increased to 183 shares; that since January 18, 1936, numerous cash dividends have been paid and the dividends attributable to the 70 shares and the increment paid to the defendant.

"9. That the defendant has in his name at the present time 439 shares of capital stock of the Appleton State Bank; that the issuance of certificate No. 563 for 70 shares was illegal and without proper authority and the accumulation added thereto as alleged herein is not the property of M. A. Schuh but rightfully belongs to the estate of Henry A. Schmitz.

"10. That the plaintiff herein and, upon information and belief, none of the heirs discovered the facts, before April, 1953, which constituted the fraud as to the statements of value expressed by defendant or the purported purchase of said 70 shares of the capital stock of the Appleton State Bank; that this action was commenced by due service of a summons on the defendant on May 25, 1953, and within six years from the time when plaintiff discovered the facts constituting the fraud upon which plaintiff's cause of action is predicated."

The prayer is that defendant be declared to be constructive trustee of the estate of Henry A. Schmitz and that he be required to account as such.

In opposition to the petition there was filed the affidavit of Alfred S. Bradford, attorney for the Schuh estate. It is therein alleged, among other things, that the shares of stock were originally sold by the executors of the estate of Henry A. Schuh upon petition, order for hearing, and notice; that an order for the sale of the shares was made on October 1, 1935, and that they were sold at public sale to Edward J. Hopfensperger, on October 17, 1935; that there were present at the sale both executors of the Schmitz estate, A. H. Krugmeier, their attorney, Mr. Hopfensperger, the husband of one of the daughters of the deceased, and a Mr. Phillip Kaufman, the husband of another daughter of the deceased; that the executors made report of the sale which was confirmed on October 29, 1935; that one of the sons of the deceased Schmitz was a coexecutor of his estate and that he was or should have been aware of the appraised value of the stock and that he participated in the decision not to redeem the same; that A. H. Krugmeier, one of the attorneys for the estate and who handled its affairs, is deceased; that there were no assets of the Schmitz estate which could have been used to redeem the stock, and that at the time the estate was hopelessly insolvent.

The allegations of the affidavit are undisputed.

Plaintiff suggests, in effect, that because the trial court appears to have done so, we should approach the question as though it were raised by demurrer. We agree that much of the trial court's memorandum opinion is devoted to matters which would ordinarily be considered upon demurrer; for instance, the doctrines of laches and estoppel are discussed at length. If it were necessary to base our determination exclusively upon the court's application of those doctrines, reversal would probably have to follow. Whether either defense is available is ordinarily not to be determined from the pleadings alone. The question is to be decided upon the particular facts and circumstances of each case. *Lingelbach*

*v. Luckenbach,* 168 Wis. 481, 170 N. W. 711; *Zlindra v. Zlindra,* 252 Wis. 606, 32 N. W. (2d) 656, facts and circumstances brought out upon trial.

It is clear, however, that the court had in mind other circumstances and was influenced by other factors, particularly that it would be inequitable to require the estate under the circumstances to defend the action. The trial judge said:

"The imposition on the estate of M. A. Schuh of the obligation to defend an action for fraud alleged to have occurred seventeen years ago, particularly in view of the fact that a great number of witnesses to the transactions in the estate have long since died, seems to be a burden wholly disproportionate to the rights sought to be vindicated."

A motion for revival is addressed to the discretion of the trial court and should not be granted "when the burden cast upon the other party thereby will grievously preponderate over the benefits to the applicant; . . . nor where delay and laches have intervened so as to place the defendant at serious disadvantage, and usually not where such delays have permitted a statute of limitations to run against the original demand. . . ." *Allen v. Frawley,* 138 Wis. 295, 298, 119 N. W. 565.

Counsel for defendant in his affidavit alleges that there were no assets in the Schmitz estate which could have been used to redeem the stock from the Marshall & Ilsley Bank. He says also that the estate was hopelessly insolvent. These allegations are not denied. If this action had been brought and recovery had while the proceedings in the matter of the Schmitz estate were still pending, the fruits thereof would necessarily have first been applied to the payment of creditors' claims. Recovery at this time would go to the heirs of the estate freed from any obligation to creditors. Some of those who might be able to throw important light upon the transaction have died. In the complaint itself there are allegations

that Mr. Krugmeier, the attorney for the Schmitz estate, and B. J. Zuelke, then president of the Appleton State Bank, participated in some of the matters involved in the transaction and are deceased. At the time of the death of Mr. Schmitz in 1931 the statutes imposed double liability upon the holders of bank stock. We may take judicial notice of the fact, and we presume that the trial judge must have considered, that at the time of the death of Mr. Schmitz and for some time thereafter bank stock was a drug on the market.

We are convinced that the circumstances are not such as to permit us to hold that the trial court abused its discretion in denying plaintiff's motion. It is worthy of note that in *Allen v. Frawley, supra,* this court, in an action involving circumstances many of which were similar to those appearing here, held that the trial court had abused its discretion in reviving the action against the executrix of a deceased defendant.

*By the Court.*—Order affirmed.